IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEDAR FAIRFAX                        :        CIVIL ACTION
                                     :
          v.                         :
                                     :
CITY OF PHILADELPHIA, et al.         :        NO. 14-922

                              MEMORANDUM

Bartle, J.                                          November 19, 2014

          Plaintiff Kedar Fairfax brings this action under 42 U.S.C. §§ 1983 and 1988 against defendants City of Philadelphia (the "City"), Philadelphia Police Commissioner Charles Ramsey in his official and individual capacities, and police officers Anthony Mooney, Jr., Michael Levin, Vincent Visco, III, and John Martin.  A John/Jane Doe is also named as a defendant.  Now before the court are the parties' cross-motions for partial summary judgment filed under Rule 56 of the Federal Rules of Civil Procedure.

          Fairfax, a private armed security guard, claims that he was arrested and detained on two occasions for carrying a firearm without a license even though he had a valid permit under a Pennsylvania statute permitting armed guards to carry a weapon to and from their places of employment.  His firearms and ammunition were seized, but he was not convicted of any offense.  According to Fairfax, the defendants have violated his Fourth Amendment protection against unreasonable seizures, which resulted in malicious prosecutions, and the defendants took his property

without just compensation as guaranteed under the Fifth and Fourteenth Amendments. Fairfax seeks declaratory, injunctive, compensatory, and punitive relief for injuries arising from these violations.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rule 56(c) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or ... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiffs. Id. at 252. "The mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the factfinder could reasonably find for the plaintiff."  Id.

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).  We view the facts and draw all inferences in favor of the nonmoving party.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## II.

The following facts are undisputed except as noted below.  In 2012, Fairfax was employed as a freelance armed security guard at several places in Philadelphia.  As part of that employment, he carried a loaded pistol and an extra magazine.  On February 12, 2012 Fairfax was driving home from a bar where he had been providing security.  As he pulled up to his house, defendants Levin and Mooney stopped him because his car had a broken headlight.  When the officers approached his vehicle, Fairfax told them that he was "Act 235" certified.

Act 235, the Lethal Weapons Training Act, 22 Pa. Stat. Ann. § 41 et seq., provides "for the education, training and

certification of such privately employed agents who, as an incidence to their employment, carry lethal weapons through a program administered or approved by the Commissioner of the Pennsylvania State Police." 22 Pa. Stat. Ann. § 42(b). Individuals who have been trained and certified pursuant to Act 235 may carry a firearm at their place of employment and while traveling to and from that location as long as they have a valid Act 235 certificate on their person. See 22 Pa. Stat. Ann. § 48(a); 18 Pa. Cons. Stat. Ann. § 6106(b)(6).

      Fairfax showed his Act 235 certificate to Levin and Mooney and explained to the officers that he was returning home from his place of employment. Fairfax had had a license to carry firearms generally, but it had been previously revoked as a result of an unrelated incident. The defendants, suspicious of Fairfax's claim that he was returning home from work because of the late hour and of his lack of any uniform or badge, sought further information. They asked him whether he had a paystub with him. He did not. Indeed, Fairfax responded that he was paid in cash under the table. Concerned with this response, Levin and Mooney asked him to call his employer on the telephone to substantiate his claim. What happened next is disputed. Fairfax asserts that he could not reach his boss because his cell phone died and the defendants would not allow him to go inside his home to plug it in. Mooney on the other hand has testified that Fairfax did not have

his employer's telephone number. The officers consulted with division detectives who instructed them to arrest Fairfax.

Levin and Mooney arrested him and in the process confiscated his weapon and the two loaded magazines that he had with it. He was charged with carrying a firearm without a license and carrying a firearm in public, and he was found not guilty of both charges in March 2013. His weapon and magazines were ultimately returned, but his ammunition, some 26 or 27 .40-caliber rounds, was not.

The second incident occurred on October 27, 2012. At approximately 8:45 p.m. on that date defendants Visco and Martin stopped Fairfax for a motor vehicle violation.[1] He had a firearm on the back seat. After the officers noticed the weapon, he told them that he was on his way to work for the night at a bar in South Philadelphia and that he was Act 235 certified. It is disputed whether Fairfax was driving southbound towards his place of employment as he has testified or northbound in the opposite direction as the officers noted in their arrest report. Again Fairfax was not in uniform, nor could he produce a paystub when asked because he was still working under the table. However, he states he had in the vehicle a badge and a card with his employer's name and number. Fairfax volunteered that he had an open firearms-

---

[1] The record is not clear what type of motor vehicle violation this was.

-5-

related case arising out of his previous arrest in February, which the officers verified through a call to division detectives. At that point Visco and Martin confiscated Fairfax's .45-caliber weapon and magazines and placed him under arrest.

Fairfax spent the following six months in jail because he could not make bail. The charges against him arising from this arrest were eventually dismissed without a trial in June 2013. Again Fairfax's firearm and magazines were returned but not his 13 rounds of .45 ACP ammunition.

There are three counts in Fairfax's complaint. Count I is a claim for unreasonable seizures under the Fourth Amendment arising out of his arrests and the confiscation of his weapons. In Count II Fairfax claims that the actions of the defendants constituted malicious prosecutions rooted in violations of his Fourth Amendment rights. Count III, his last claim, asserts that his ammunition which was never returned was taken without just compensation in violation of the Fifth and Fourteenth Amendments. The City and defendant Ramsey seek summary judgment in their favor on all of these claims, and defendants Levin, Mooney, Visco, and Martin have moved for summary judgment in their favor on Counts I and II. Fairfax seeks summary judgment on Count I.

### III.

We first consider the argument of the defendants that the City and Ramsey, in his official capacity, should be granted

summary judgment because the record reveals no policy or custom of deliberate indifference to citizens' rights sufficient to support municipal liability.[2]  According to Fairfax, he is entitled to summary judgment in his favor on Count I, his claim of unreasonable seizures under the Fourth Amendment based on the undisputed facts in the record that the City did not have adequate Act 235 training in place at the time of his arrests.

A plaintiff has a cause of action pursuant to 42 U.S.C. § 1983 against persons who deprive the plaintiff of his or her federally guaranteed rights while acting under the color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  As the Supreme Court determined in Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), municipalities are among those "persons" subject to suit via § 1983.  A municipality may be sued under this statute only "when execution of a government's policy or custom, whether made by its

---

[2]  We treat Fairfax's official-capacity claims against Ramsey in tandem with his claims against the City.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. Such a policy or custom can include a failure adequately to train municipal employees when the failure rises to the level of deliberate indifference towards the potential violation of federal rights:

> Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

City of Canton v. Harris, 489 U.S. 378, 389-90 (1989). The failure to train "must be closely related to the ultimate injury," and it must have "actually caused" the harm. See id. at 391. It is not

enough simply to show that a particular officer was inadequately trained or that more or better training would have avoided the injury in question.  Id. at 390-91.

In this case, Fairfax focuses on Levin's testimony that he never received any sort of official training regarding Act 235. Rather, Levin explained that he had learned about the statute "just through general knowledge."  Mooney did receive Act 235 training at the police academy, but it was his experience on the force over eleven years rather than his classroom instruction that served as the basis for his decision to arrest Fairfax.  Finally, Visco also received Act 235 training, but he misstated certain unrelated parts of the law in his deposition.[3]  This is clear evidence, according to Fairfax, that the City's Act 235 training was either nonexistent or inadequate.  In response the City has produced the Act 235 presentation given to trainees at the police academy since as early as 2000 as well as a 2001 police directive on firearms laws which discusses the statute.

Levin's testimony that he did not receive Act 235 training as well as the other evidence on which Fairfax relies is not sufficient to establish for purposes of summary judgment that the City entirely failed to train its officers.  There must be more than a scintilla of evidence in the nonmovant's favor to survive

---

[3] Specifically, Visco stated that Act 235 requires a person to lock up a firearm at home once he or she returns from work, but the statute contains no such language.

summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Furthermore, Fairfax has not explained how the City's training regimen actually caused the injuries he claims to have suffered.  Harris, 489 U.S. at 391.  During the two encounters in 2012 the officers focused their questioning of Fairfax on the legally relevant issue of whether he was indeed traveling to or from work.  Exercising their judgment in the field after consulting with their superiors, they determined incorrectly that he was not.  The Supreme Court has cautioned against attributing such a mistake to a police officer's training without a heightened showing.  See id. at 391-92.  It has stated, "plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  Id.

     Fairfax has not demonstrated any link between the defendants' error and the City's Act 235 training.  Nor has he presented any evidence that the City's failure to return his ammunition was the result of any policy or custom.  There is an insufficient basis for a reasonable factfinder to find that the City's efforts to train its officers were so deficient as to rise to the level of deliberate indifference to the violation of federal rights.  Summary judgment will be granted in favor of the City and in favor of Ramsey in his official capacity on all of Fairfax's claims, and Fairfax's motion for summary judgment will be denied.

IV.

We next discuss the motion of Levin, Mooney, Visco, and Martin for summary judgment in their favor on Count I and Count II of Fairfax's complaint.  Count I, as noted above, is his claim for unreasonable seizures under the Fourth Amendment.  Count II is a cause of action for malicious prosecution, which in the § 1983 context is a tort predicated on violations of the protection against unreasonable seizures granted under the Fourth Amendment.  See Donahue v. Gavin, 280 F.3d 371, 379-82 (3d Cir. 2002).

It is necessary for a plaintiff to prove the absence of probable cause to be successful on both of these claims.  A warrantless arrest such as Fairfax's fails constitutional scrutiny when the arresting officers did not have probable cause that a crime has been committed by the person arrested.  United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).  Similarly, in order to prove a malicious prosecution claim, a plaintiff must show that:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.2003) (emphasis added).

In the case before us, genuine disputes over the material facts surrounding Fairfax's arrests prevent any probable cause determination at this stage.  See Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).  The motion of the defendants Levin, Mooney, Visco, and Martin for summary judgment on Counts I and II will be denied.[4]

V.

Finally, we still have before us the contention that Fairfax's claims against Ramsey in his individual capacity should be dismissed.  An individual government defendant in a civil rights action must have had personal involvement in the alleged wrongdoing to be held liable.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Here, as the defendants argue, there is no record evidence of any personal involvement by Ramsey in the events at issue.  Fairfax provides no response to this position.  Summary judgment will be granted in favor of Ramsey with respect to Fairfax's claims against him in his personal capacity.

VI.

In sum, the motion of Fairfax for summary judgment as to Count I of the complaint for failure to train will be denied.  The

---

[4]  These defendants have not moved for summary judgment on Count III, Fairfax's takings claim.

motion of the defendants for summary judgment will be granted in part and denied in part. Summary judgment will be granted in favor of Ramsey and the City and against Fairfax as to all of Fairfax's claims. Summary judgment will be denied as to defendants Levin, Mooney, Visco, and Martin.